## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DWIGHT L. ALMOND, III and | ) | |
| KEVIN C. WEEMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07-4064-JAR |
| | ) | |
| UNIFIED SCHOOL DISTRICT #501, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Dwight L. Almond, III, and Kevin C. Weems filed this action against their

employer, the Unified School District #501 ("USD"), alleging violations of the Age

Discrimination in Employment Act ("ADEA"),[1] and the Kansas Act Against Discrimination

("KAAD").[2]  In the Pretrial Order, plaintiffs alleged they were subjected to a wage cut because

of their age, in violation of the ADEA.[3]  On defendant's motion, the Court dismissed the case in

its entirety.  This case is now before the Court on remand from the Tenth Circuit, for

reconsideration of this Court's prior judgment in light of an intervening change of law.

## I.     Procedural History

In 2008, defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction or

Alternatively for Summary Judgment (Doc. 44), arguing that both plaintiffs failed to exhaust

their administrative remedies, failed to do so within the statute of limitations, and failed to show

---

[1] 29 U.S.C. § 621, *et seq.*

[2] K.S.A. § 44-1001, *et seq.*

[3] (Doc. 43 at 8.)

a prima facie case of age discrimination or a genuine issue of material fact that defendant's reasons for the employment action were pretextual. On December 1, 2008, the Court granted defendant's motion to dismiss for lack of subject matter jurisdiction.[4] The Court found that Weems failed to exhaust his administrative remedies because he failed to include any allegations regarding the pay-setting event—the RIF—or the subsequent wage reduction in his Kansas Human Rights Commission complaint. Additionally, the Court found that both Weems and Almond failed to exhaust their administrative remedies within the requisite time period. Because the Court dismissed all claims on exhaustion grounds, it did not proceed to consider the merits of plaintiffs' discrimination claims.

After the case was dismissed, but while it was pending on appeal before the Tenth Circuit, Congress passed the Lilly Ledbetter Fair Pay Act of 2009, legislatively overruling the United States Supreme Court decision in *Ledbetter v. Goodyear Tire & Rubber Co.*,[5] which this Court cited in dismissing the original action. In light of the intervening change of law, the Tenth Circuit entered an order granting the parties' motion to voluntarily dismiss the appeal upon the condition that this Court vacate and reconsider its judgment.[6]

After a status conference with the parties, the Court vacated its judgment[7] and directed the parties to brief the issue of the effect of the Lilly Ledbetter Fair Pay Act on the statute of limitations in this case. The parties agreed that they would rely on the same factual record unless

---

[4](Doc. 52.)

[5]550 U.S. 618 (2007).

[6](Doc. 60.)

[7](Doc. 63.)

plaintiffs could show a compelling reason to supplement the factual record, and the Court would consider the parties' arguments on the statute of limitations before proceeding to defendant's alternative arguments for summary judgment, as presented in the original summary judgment briefs.

This matter is before the Court on the parties' supplemental briefs addressing the motion to dismiss (Docs. 66, 69, 70) and defendant's Motion for Summary Judgment or to Dismiss (Doc. 44).

## II.    Lilly Ledbetter Fair Pay Act of 2009

The Court's original Memorandum and Order cited to the Supreme Court's 2007 decision in *Ledbetter v. Goodyear Tire & Rubber Co.*,[8] in which the Court concluded that an employer's decision with respect to setting pay is a discrete act of discrimination and the relevant period of limitations begins to run when the act first occurs.[9] Lilly Ledbetter received poor performance evaluations from several supervisors because of her sex, and as a result of these evaluations, her pay was not increased as much as if she had been evaluated fairly.[10] Toward the end of her employment, she was paid significantly less than her male colleagues.[11] Her Title VII claim was based on discriminatory pay checks calculated on the basis of discriminatory evaluations.[12] However, the Supreme Court held that, because the evaluations occurred outside of the charging period, and the paychecks were merely the "effect" of that discrimination, her claims were time

---

[8]550 U.S. 618 (2007).

[9]*Id.* at 621.

[10]*Id.* at 622.

[11]*Id.*

[12]*Id.* at 628.

barred because she did not file an administrative charge within 180 days of when the discriminatory pay decisions were made and communicated to her.[13]

The *Ledbetter* decision prompted a Congressional response; and the Supreme Court's decision was superceded by the enactment of the Lilly Ledbetter Fair Pay Act of 2009 ("FPA"). The FPA amended 42 U.S.C. § 629(d) of the ADEA by adding the following subparagraph, defining when an unlawful practice "with respect to discrimination in compensation" "occurs" for purposes of triggering the administrative filing period:

> (3) For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this chapter, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.[14]

Congress's purpose in adding this language to the ADEA, and similar language to Title VII, the Americans with Disabilities Act, and the Rehabilitation Act, was to reverse the Supreme Court's *Ledbetter* decision which, in Congress's view, unduly restricted the time period in which victims of wage discrimination could seek relief:

> (1) The Supreme Court in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), significantly impairs statutory protections against discrimination in compensation that Congress established and that have been bedrock principles of American law for decades. The Ledbetter decision undermines those statutory protections by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory

---

[13]*Id.* at 628–29.

[14]29 U.S.C. § 626(d)(3) (as amended by Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 4, 123 Stat. 5, 5 (2009) [hereinafter FPA]).

compensation decisions or other practices, contrary to the intent of Congress.

(2) The limitation imposed by the Court on the filing of discriminatory compensation claims ignores the reality of wage discrimination and is at odds with the robust application of the civil rights laws that Congress intended.[15]

Furthermore, Congress made the effective date of the FPA May 28, 2007, the day before *Ledbetter* was decided, making it clear that the statute was intended to overrule *Ledbetter* and not other precedents. In making it retroactive, Congress clarified that the statute applies to "all claims of discrimination in compensation" rather than to all claims of discrimination generally:

This Act, and the amendments made by this Act, take effect as if enacted on May 28, 2007, and apply to all claims of *discrimination in compensation* under . . . the Age Discrimination in Employment Act of 1967 (29 U.S.C. 621 et seq.), . . . that are pending on or after that date.[16]

As a result of the FPA, "each paycheck that stems from a discriminatory compensation decision or pay structure is a tainted, independent employment-action that commences the administrative statute of limitations."[17]

On remand from the Tenth Circuit, this Court must determine whether this legislative change affects the accrual date of plaintiffs' claims in this case.

---

[15]42 U.S.C. §2000e-5, note (as amended by FPA § 2).

[16]FPA § 6 (emphasis added).

[17]*Noel v. Boeing Co.*, —F.3d—, 2010 WL 3817090, at *4 (3d Cir. Oct. 1, 2010).

### III.     Factual Background

USD 501 has a board policy authorizing it to assign and transfer classified employees within the district to meet educational potential and operational needs, as well as a policy outlining the process and procedure when USD determines it necessary to declare a reduction in force ("RIF").  These policies are included in USD's policy handbook, which it provides to all employees, including plaintiffs Almond and Weems.

**Almond**

In 2003, USD decided it was necessary to reduce its budget by five percent.  Under the direction of USD's budget director, the manager of USD's classified employees recommended, and USD approved, the elimination of: a flooring position; a ceiling repair position; a custodial position; an open mower position; and the sole cement work position at the USD Service Center, which was Almond's position.  Almond was 46 years old at the time, was classified as a Maintenance IV laborer, and was the sole USD employee performing cement work at the USD Service Center.

On June 10, 2003, USD notified Almond that: (1) his position was being eliminated effective July 1, 2003; (2) USD was offering him a Custodian III position as Head Building Operator; (3) this Custodian III position was a lower salary grade than the Maintenance IV position; (4) nonetheless, if Almond accepted the Custodian III position, he would continue to be paid at the higher Maintenance IV salary rate for two years, after which his salary would be reduced to the Custodian III salary rate; and (5) during the two year saved pay grade period, Almond would not receive any annual salary increases.  Almond accepted USD's offer.

As of July 1, 2003, Almond was paid $17.15 per hour as a Maintenance IV classification;

the Custodian III position salary rate was $12.47 per hour.  Almond thus continued to be paid

$17.15 per hour for two years.  In September 2005 his salary was reduced to $13.97 per hour, the

current rate for Custodian III employees with Almond's seniority.

Almond filed his complaint with the Kansas Human Rights Commission ("KHRC") on

April 13, 2006, alleging that he was forty-eight years old and that: on July 1, 2005, USD denied

him a wage increase; on September 12, 2005, his wage was decreased; and on February 28,

2006, he was subject to a written reprimand.  USD received the charge on April 13, 2006, and on

February 5, 2007, the Equal Employment Opportunity Commission ("EEOC") informed Almond

that his case would be closed because he failed to file the charge within 300 days of the

employment decision that lead to the denial of his pay increases and subsequent pay reductions.

The EEOC closed its case file and issued Almond a right to sue letter dated February 22, 2007.

**Weems**

Similarly, in 2004, USD decided it was necessary to implement a RIF, as part of a ten

percent budget reduction.  To that end,  the manager of USD's classified employees

recommended, and USD approved, the elimination of: one cabler; four painters; one equipment

operator; one floor repair technician; one fence repair technician; and one substitute custodian.

Weems was 43 years old at the time and was classified as a Maintenance II painter.  There were

six painters in the USD Service Center; Weems was one of the four painters whose positions

were eliminated.  The two painters whose positions were not eliminated were older than Weems

and had more seniority than Weems.

On May 29, 2004, USD notified Weems that: (1) his position was being eliminated

effective June 30, 2004; (2) USD was offering him a Maintenance I position as a mower; (3) this

Maintenance I mower position was a lower salary grade than the Maintenance II painter position; (4) nonetheless, if Weems accepted the Maintenance I mower position, he would continue to be paid at the higher Maintenance II salary rate for two years, after which his salary would be reduced to the Maintenance I salary rate; and (5) during the two year saved pay grade period, Weems would not receive any annual salary increases. Weems accepted USD's offer.

As of June 30, 2004, Weems was paid $14.05 per hour as a Maintenance II painter. Weems was paid at this higher salary rate for two years. In August 2006, his salary was reduced to $12.30 per hour, the Maintenance I salary for an employee with his seniority.

Weems filed his complaint with the KHRC on April 24, 2006, alleging that he was 45 years old and that USD discriminated against him by not providing a wage increase on July 1, 2005. The complaint did not state that Weems was discriminated against because of the transfer to a Maintenance I position in 2004 and did not allege discrimination based on his pending wage decrease. On February 5, 2007, the EEOC sent Weems a letter detailing that according to its investigation, Weems's ineligibility for a 2005 pay increase and subsequent 2006 pay reduction (which occurred after the charge was filed) was a result of the 2004 RIF, and his case would be closed because the employment action, the RIF, occurred over 300 days prior to filing of the charge. Weems was issued a right to sue letter on February 22, 2007.

## IV.    Discussion

The Tenth Circuit has directed that, on remand, this Court is to reconsider its judgment, which dismissed plaintiffs' claims for failure to exhaust and failure to timely exhaust. The issue is whether the FPA affects any part of the Court's original decision.

Failure to exhaust administrative remedies is a matter that goes to the Court's subject

matter jurisdiction and is considered under Rule 12(b)(1).[18] Failure to timely exhaust

administrative remedies is an affirmative defense.[19] Because the Court must consider materials

outside of the complaint in evaluating the timeliness of plaintiffs' claims, this matter is

considered under Rule 56.

The Court first considers whether plaintiffs' claims were within the scope of their

administrative complaints, and thus properly exhausted. Then the Court will proceed under Rule

56 to consider whether plaintiffs' claims were timely. Because the Court finds in favor of

defendant on these exhaustion issues, it need not proceed to the merits of plaintiffs' claims.

## A.      Failure to Exhaust

Defendant's first argument for dismissal is based on subject matter jurisdiction. In

determining what claims were administratively exhausted, the Court considers (1) whether a

charge was filed and (2) whether the federal claim was included within the scope of the

allegations in the administrative complaint.[20] Plaintiff bears the burden of showing that the court

has subject matter jurisdiction.[21]

When a defendant attacks the facts on which subject matter jurisdiction is premised, the

court cannot assume the truth of the allegations in the complaint, but must refer to evidence

---

[18]*Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1306 (10th Cir. 2005); *Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996) (noting that, although timeliness is not jurisdictional, exhaustion is).

[19]*Jones,* 91 F.3d at 1399 n.1.

[20]*See Semsroth v. City of Wichita*, 304 F. App'x 707, 712 (10th Cir. 2008); *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183–86 (10th Cir. 2007).

[21]*Burdett v. Harrah's Kan. Casino Corp.*, 260 F. Supp. 2d 1109, 1112 (D. Kan. 2003).

outside the complaint.[22]  However, because administrative exhaustion it not an aspect of the substantive claim of discrimination, the court need not convert the motion into a motion for summary judgment.[23]

As defendant notes, the FPA only affects when a "discriminatory compensation decision or other practice" is deemed to have occurred, thereby modifying the time period in which an administrative charge must be filed when the discrimination in compensation was the result of such "discriminatory compensation decision or other practice."  The FPA leaves intact the requirement that each discrete act of discrimination must be exhausted administratively, as well as the rules that limit plaintiff's claims to those within the scope of the administrative charge.[24]  Plaintiffs do not dispute this, but instead argue that their claims are not based on "discrete acts" but on "acts related to pay."  To the extent this distinction affects the timeliness of plaintiffs' claims, the Court will address this below.

In determining whether a particular claim has been exhausted, therefore, the court's inquiry is limited to the scope of the allegations raised in the administrative charge because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative

---

[22]*Stewart v. Mitchell Transport, Inc.*, 197 F. Supp. 2d 1310, 1313 (D. Kan. 2002) (citing *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203–04 (10th Cir. 2001)).

[23]*Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

[24]*See, e.g.*, *Mikula v. Allegheny County*, 583 F.3d 181, 184 (3d Cir. 2009) (noting that the purpose of the FPA was "to reinstate the law regarding the timeliness of pay compensation claims as it was prior to the *Ledbetter* decision, which Congress believed undermined statutory protections against compensation discrimination by unduly restricting the time period in which victims could challenge and recover for discriminatory compensation decisions"); *Low v. Chu*, No. 09-CV-0398-CVE-PJC, 2010 WL 132461, at *5 (N.D. Okla. Jan. 8, 2010) ("The Act relates to claims of discriminatory compensation practices only."); *Mays v. Cent. States Se. & Sw. Areas Pension Fund*, No. 08-2655-EFM, 2009 WL 2163177, at *2 n.3 (D. Kan. July 1, 2009); *Leach v. Baylor Coll. of Med.*, No. H-07-0921, 2009 WL 385450, at *17 (S.D. Tex. Feb. 17, 2009) ("The Fair Pay Act of 2009 only affects the *Ledbetter* decision with respect to the timeliness of discriminatory compensation claims."); H.R. Rep. No. 110-237, at 3, 17 (2007).

investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'"[25] "In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that 'each discrete incident' of alleged discrimination or retaliation 'constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.'"[26] Termination, failure to promote, denial of transfer, or refusal to hire are such "discrete acts."[27] "[U]nexhausted claims involving discrete employment actions are no longer viable,"[28] and may not be asserted under a "continuing violation" theory.[29] Therefore, "[a] party may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances."[30] The Court examines each plaintiffs' administrative charge.

### 1. Weems

Defendant argues that Weems's administrative complaint challenged USD's failure to give him an annual wage increase in 2005 (a claim he later abandoned), but did not mention the 2004 transfer to a lower-paying position and pay freeze, or the August 2006 pay reduction. The Pretrial Order only asserts a claim based on a "wage cut." As this Court previously noted, and

---

[25]*Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quoting *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)).

[26]*Id.* (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)).

[27]*Martinez*, 347 F.3d at 1210 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

[28]*Id.*

[29]*Id.* at 1211 (citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003)).

[30]*Schroder v. Runyon*, 1 F. Supp. 2d 1272, 1274 (D. Kan. 1998) (quoting *Harrell v. Spangler, Inc.*, 957 F. Supp. 1215, 1219 (D. Kan. 1997)).

plaintiffs have admitted,[31] Weems's administrative charge makes no mention of a wage cut.[32] Hence, administrative remedies were not exhausted as to this claim.[33] Furthermore, Weems included no factual allegations relating to the 2004 job elimination or job transfer, therefore, administrative remedies have not been exhausted as to these claims either.[34] To whatever extent Weems's wage-reduction claim (although unexhausted) was a delayed consequence of prior unexhausted "discrete acts," the Court will address those arguments in determining the timeliness of Weems's claim below.[35]

Plaintiffs have attached additional evidence to their supplemental briefing—Exhibit 3, entitled "You May File a Charge," and Exhibit 10, entitled "Complaint Information Sheet."[36] At the time the parties agreed to brief the effect of the FPA on the statute of limitations in this case, they agreed to rely on the present factual record. Any request to supplement the facts was to be made by separate motion, requesting leave and setting forth compelling reasons for the request.[37] Plaintiffs have not done so. Therefore, the Court declines to consider this late evidence. It was

---

[31](Doc. 69 at 7.)

[32]*See* Doc. 52 at 5–7.

[33]*See Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (dismissing claim because plaintiff was required to "exhaust administrative remedies for each individual discriminatory or retaliatory act") (citation omitted); *Martinez*, 347 F.3d at 1211 (holding that discrete acts of discrimination must be individually exhausted, even if the incidents occurred after the filing of an EEO complaint); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1238 (10th Cir. 2004) (same).

[34]*See Jones v. United Postal Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) ("In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim").

[35]In the original order, this Court also held that it lacked subject-matter jurisdiction over Weems's claims because his KHRC complaint did not mention the RIF that caused his job transfer, salary freeze, and pay reduction. The Court addresses this in the section on timeliness.

[36](Doc. 69, Ex. 10.)

[37](Doc. 65.)

not presented in response to the original summary judgment motion; it does not relate to the issue of "timely exhaustion," which the parties agreed to re-brief; and plaintiffs did not request leave of Court to reopen the factual record, nor did they state "compelling reasons" for doing so. Even if the Court were to consider the additional evidence, plaintiffs have not shown that either exhibit was intended to serve as a "charge."[38]  Weems's wage-cut claim is dismissed for lack of subject matter jurisdiction.

### 2.    Almond

Although Almond's administrative complaint challenged the September 2005 pay reduction, defendant argues Almond did not challenge the 2003 decision to eliminate his position and transfer him to a lower-paying position with a two-year salary freeze.  In essence, defendant contends Almond did not identify the correct factual basis for his claim.  Because the 2005 wage reduction was a result of the 2003 job elimination and transfer to a lower-paying position, the real source of Almond's grievance was the series of budget decisions made in 2003.  And because the 2003 decisions were not mentioned, Almond has not properly exhausted the factual basis for his wage-reduction claim.

In the administrative complaint, Almond specifically challenged the September 12, 2005 "wage decrease."  In the Pretrial Order, he claimed he was subjected to age discrimination when he experienced a "wage cut."  This claim, therefore, has been exhausted.  Almond did not include any facts in his administrative complaint relating to the 2003 job elimination or transfer

---

[38]See Fed. Express Corp. v. Holowecki, 552 U.S. 389, 128 S. Ct. 1147 (2008).  A document filed with the EEOC is a charge if it "(i) provides the minimum information the regulations require, and (ii) can 'be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee.'"  Semsroth v. City of Wichita, 304 F. App'x 707, 713 (10th Cir. 2008) (quoting Holowecki, 552 U.S. at 402).  The second factor is viewed objectively and is informed by whether the EEOC actually treated the filing as a charge.  Id. at 713.  Here, plaintiffs have made no such showing.

to a lower-paying position with a two-year salary freeze. To whatever extent there is a causal relationship between the 2003 unexhausted events and the 2005 exhausted events (*i.e.*, whether Almond's wage-reduction was part of a previous, but unexhausted, "discrete act"), the Court considers those arguments in evaluating the timeliness of Almond's administrative complaint.

### B.    Failure to Timely Exhaust

Defendant argues Almond's and Weems's claims each arose out of a "discrete act" that occurred in 2003 and 2004, respectively, when they were informed their positions were being eliminated, and they were offered transfers to lower-paying positions, with saved pay grade for two years. Defendant argues the decisions "occurred"—thereby triggering the period for filing a claim—at the time the decisions were announced and the plaintiffs were transferred. Defendant argues the plaintiff's claims are thus time barred.

Plaintiffs respond that their administrative claims were timely under the FPA because they were filed within 300 days after they were "subject[ed] to" or "affected by" a discriminatory compensation decision, *i.e.*, within 300 days of the effective date of the wage reductions, in 2005 and 2006, respectively. Plaintiffs contend the wage reductions were not after effects of a "discrete act," rather the wage freezes and pay reductions, or the RIF, constituted "discriminatory compensation decision[s] or other practice[s]" which they were later "subject[ed] to" or "affected by."[39]

Because the Court must consider materials outside the Complaint to determine when

---

[39]Plaintiffs also argue "the decision (to freeze wages and reduce pay) or practice (the RIF) was specifically intended to reduce pay to Plaintiffs and other employees of the district based on age." (Doc. 69 at 4–5.) To the extent plaintiffs are arguing that courts must consider the employer's intent at the time of the decision to determine whether it was a "compensation decision or other practice" within the meaning of the FPA, the Court declines to consider defendant's intent as part of statutory construction or proceed to the merits of plaintiffs' claims.

plaintiffs' claims accrued, it applies a summary judgment standard. If "there is no genuine issue as to any material fact," then the movant is "entitled to judgment as a matter of law."[40] A fact is material if a dispute over it would affect the outcome of the suit.[41] An issue is genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[42] In considering the facts, the court is cognizant that it may not make credibility determinations or weight the evidence; and all inferences are viewed in the light most favorable to the nonmoving party.[43]

Here, the relevant facts are uncontroverted; and the dispute involves a question of law. In order to determine which events triggered the statute of limitations, the Court reviews its prior decision under pre-*Ledbetter* law, the language and purpose of the FPA, and post-*Ledbetter* case law.

### 1.    Pre-*Ledbetter* Law

Although this Court's previous decision cited to the *Ledbetter* decision, the relevant legal standards pertaining to administrative exhaustion of "discrete acts" of discrimination, pre-existed *Ledbetter*.

Under Title VII, an aggrieved individual is required to file a charge within a specified period of time after the allegedly unlawful conduct.[44] For ADEA claims, plaintiffs are allotted up to 300 days to challenge the discriminatory action.[45] Generally, "[t]he EEOC charging period

---

[40]Fed. R. Civ. P. 56(c)(2).

[41]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[42]*Id.*

[43]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[44]*Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007).

[45]*Haynes v. Level 3 Commc'ns, L.L.C.*, 456 F.3d 1215, 1222 (10th Cir. 2006).

is triggered when a discrete unlawful practice takes place."[46]  And "[e]ach discrete

discriminatory act starts a new clock for filing charges alleging that act."[47]  "[D]iscrete

discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

timely filed charges."[48]

This was the law before *Ledbetter*, and the rule of law upon which this Court relied in

holding that plaintiffs' claims were untimely because they "rel[ied] on the consequence of the

discrete unlawful employment action—the reductions in pay," rather than "the actual discrete

employment action—the decision to demote and freeze pay with a grace period until a pay

reduction in 2006."[49]  Even before *Ledbetter*, the Tenth Circuit held that a discrete act accrues

under the ADEA on "the date the employee is notified of an adverse employment decision by the

employer."[50]  "An employee receives notice of an 'adverse employment decision when a

particular event or decision is announced by the employer.'"[51]  "[N]otice or knowledge of

discriminatory motivation is not a prerequisite for a cause of action to accrue . . . [o]n the

contrary, it is knowledge of the adverse employment decision itself that triggers the running of

the statute of limitations."[52]  This Court previously held that the allegedly unlawful employment

---

[46]*Id.*; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

[47]*Morgan*, 536 U.S. at 113.

[48]*Id.*

[49](Doc. 52 at 8.)

[50]*Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003) (quoting *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)).

[51]*Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007) (quoting *Hulsey*, 43 F.3d at 557).

[52]*Davidson*, 337 F.3d at 1187 (quoting *Hulsey*, 43 F.3d at 558–59); *Clark v. Yellow Transp., Inc.*, No. 07-2072-JPO, 2009 WL 2710196, at *7 (D. Kan. Aug. 25, 2009).

actions were "discrete acts" that occurred in 2003 and 2004 when plaintiffs were notified that their job positions were being eliminated and they accepted lower-paying positions with a two-year pay freeze. Even after the FPA, and independent of *Ledbetter*, this Court finds plaintiffs' job eliminations and transfers were discrete acts because they were clearly identifiable employment decisions that were announced to plaintiffs more than 300 days before plaintiffs filed their administrative charges.

For plaintiffs to now benefit from the newly-enacted FPA—whereby a claim accrues with each discriminatory paycheck—their wage-reduction claims must involve "discrimination in compensation" and plaintiffs must point to a "discriminatory compensation decision or other practice."[53] Plaintiffs contend the wage reductions, which were instituted as part of their transfers two years earlier, were each the result of a "compensation decision or other practice" within the meaning of the FPA. Defendant argues the job eliminations and transfers were "discrete acts," not covered by the FPA. The Court looks to the language of the statute and legislative history to determine its scope.

## 2. Statutory Construction

The court's primary task in interpreting statutes is to determine Congressional intent using traditional tools of statutory construction.[54] The court begins with the statute's plain language.[55] "If the statute's plain language is ambiguous as to Congressional intent, 'we look to

---

[53]*Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 374 (D.C. Cir. 2010).

[54]*United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) (quoting *St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000)).

[55]*Id.* (citing *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991)).

17

the legislative history and the underlying public policy of the statute.'"[56] "As a general rule of statutory construction, a statute is ambiguous if it is 'capable of being understood in two or more possible senses or ways.'"[57]

The text of the FPA reveals that its dominant purpose was to reverse the *Ledbetter* opinion, and specifically, the holding in *Ledbetter* that had impaired statutory protections against "discrimination in compensation."[58] Congress objected specifically to the "limitation imposed by the Court on the filing of discriminatory compensation claims" because it "ignores the reality of wage discrimination."[59] Moreover, the section of the Act that amended the ADEA did so by adding a paragraph defining when "an unlawful practice occurs, with respect to discrimination in compensation."[60] Congress made the FPA effective as if enacted on May 28, 2007—the day before the Supreme Court decided *Ledbetter*—and applied it "to all claims of discrimination in compensation" brought under several statutes, including the ADEA.[61] Thus, the Act clearly limits its scope to "discrimination in compensation," and leaves intact other kinds of "discrete acts" of discrimination recognized under pre-*Ledbetter* case law.

Section 4 of the Act, amending the ADEA, states that an "unlawful practice . . . with respect to discrimination in compensation" occurs when a "discriminatory compensation

---

[56]*Id.* (quoting *United States v. LaHue*, 170 F.3d 1026, 1028 (10th Cir. 1999)).

[57]*Houghton ex rel. Houghton v. Reinertson*, 382 F.3d 1162, 1169 (10th Cir. 2004) (quoting *Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001)).

[58]42 U.S.C. §2000e-5, note (as amended by FPA § 2(1)).

[59]42 U.S.C. §2000e-5, note (as amended by FPA § 2(2)).

[60]29 U.S.C. § 626(d)(3) (as amended by FPA § 4).

[61]42 U.S.C. § 2000e-5, note (as amended by FPA § 6).

decision or other practice" is adopted, applied to the complainant, or affects the complainant's pay.[62]  Via this language, the amendment is limited to practices "with respect to discrimination in compensation," so that the words "discriminatory compensation" modify both the word "decision" and the phrase "other practice."  Under the plain language of the statute, then, a decision to eliminate a position and transfer an employee to a lower-paying position is not a "compensation decision" or a "compensation practice."

Plaintiffs argue, and defendant concedes, that the statute is ambiguous as to what employment decisions could potentially be captured within the phrase "or other practice."  The phrase is not defined in the statute.  Plaintiffs argue it is broad enough to encompass, not just "compensation decisions," but "any decision affecting pay."  And therefore, any time an employee is paid reduced wages as a result of a decision affecting pay, a new claim may be asserted.

Application of the general maxim of statutory construction *noscitur a sociis* leads to an interpretation closer to that advocated by defendant.  "Under the venerable interpretive canons of *noscitur a sociis* and *ejusdem generis*, the meaning of a catchall phrase is given precise content by the specific terms that precede it."[63]  "The maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress."[64]  Under this rule, the catchall phrase "or other practice" is understood to mean "or

---

[62]29 U.S.C. § 626(d)(3) (as amended by FPA, § 4).

[63]*United States v. Phillips*, 543 F.3d 1197, 1206 (10th Cir. 2008).

[64]*In re Ford*, 574 F.3d 1279, 1289 (10th Cir. 2009) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)).

other discriminatory compensation practice." This interpretation encompasses the facts in the *Ledbetter* case without being overly broad or allowing a broad swath of employment discrimination claims to escape the 180- or 300-day administrative statute of limitations.[65]

Reading "other practices" to mean "discriminatory compensation practices" is also consistent with Congressional intent as revealed in the legislative history. The Lilly Ledbetter Fair Pay Act of 2007, H.R. 2831—a predecessor to the FPA that was enacted in 2009—was introduced with very similar provisions. In explaining the purpose of the proposed legislation, the House Education and Labor Committee explained that every discriminatory paycheck resulting from an "earlier discriminatory pay decision or other practice" would be actionable regardless of the date on which the "decision or other practice to provide the discriminatory compensation" was adopted.[66] In rejecting an amendment offered by Rep. Ric Keller that would have struck the phrase "other practices" from the House Bill, the Committee explained that the bill was intended "to capture the wide gamut of *compensation* practices, from single, discrete decisions *about pay* to arrangements, schemes, systems, or other practices *related to pay*."[67] The Committee also pointed out that a bill that excludes "other practices" would not fully reverse *Ledbetter*, in that "'other practices' captures the fact pattern in [*Ledbetter*], where sex-based performance evaluations were used in conjunction with a performance-based pay system to effectuate the discriminatory pay."[68] Moreover, during the Senate floor debate on the Lilly

---

[65]*See Noel v. Boeing Co.*, –F.3d–, 2010 WL 3817090, at *6 n.6 (3d Cir. Oct. 1, 2010); *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010).

[66]H.R. Rep. No. 110-237, at 3 (2007).

[67]H.R. Rep. No. 110-237, at 5 (emphasis added).

[68]H.R. Rep. No. 110-237, at 5.

Ledbetter Fair Pay Act of 2009, Senate Bill 181, concerning an amendment offered by Sen. Specter that would have removed the phrase "or other practices," Sen. Mikulski, the primary sponsor of the Senate Bill responded:

> Senator Specter has said that his amendment is necessary because the bill, as drafted, is overbroad and could apply to discrete personnel decisions, like promotions and discharges. That's not true. The bill specifically says that it is addressing "discrimination in compensation." That limiting language means that it already only covers such claims—nothing more, nothing less.[69]

The legislative history similarly demonstrates that the bill was drafted in response to, and in reliance on, Justice Ginsburg's dissent in *Ledbetter*. In discussing the 2007 proposed legislation, the House Education and Labor Committee noted that the Court's decision in *Ledbetter* was "fundamentally unfair to victims of pay discrimination who may lose their right to challenge a discriminatory compensation action" because, "[w]hile workers know immediately when they are fired, refused employment or denied a promotion or transfer, the secrecy and confidentiality associated with employees' salaries make pay discrimination difficult to detect."[70] The House committee also noted that *Ledbetter* "ignores the reality that pay discrimination is incredibly difficult to detect" because workplace norms discourage conversations about salaries, many employers have formal policies prohibiting such discussions with co-workers, and pay discrimination is "rarely accompanied by circumstances suggestive of bias."[71] The Committee cited to Justice Ginsburg's dissent.[72]

---

[69]155 Cong. Rec. S757 (daily ed. Jan. 22, 2009) (statement of Sen. Mikulski).

[70]H.R. Rep. No. 110-237, at 6.

[71]H.R. Rep. No. 110-237, at 7.

[72]H.R. Rep. No. 110-237, at 8, 10, 16-17.

In the Senate debate on Senate Bill 181 that followed, the bill's proponents likewise argued that the bill was necessary because employers are so easily able to "conceal" discriminatory pay decisions. After noting that the bill would reinstate the pre-*Ledbetter* interpretation of when the 180- or 300-day time limit began to run, Sen. Leahy stated, "[i]n this way it allows workers who are continuing to be short-changed to challenge that ongoing discrimination when the employer conceals its initial discriminatory pay decision."[73] Sen. Durbin similarly explained that the FPA would not do away with the administrative statute of limitations, but would carve out an exception to the general rule, comparable to tolling in cases of fraud or concealment:

> But we make an exception in most cases for what is known as fraud and concealment. If the person guilty of the wrongdoing has concealed what they are doing and you don't know it, you can't say the time is running. It doesn't run in that circumstance because there is concealment. In this case, there is clearly a situation where you don't know what your fellow employee is being paid.[74]

Finally, proponents of the legislation continued to identify promotions and demotions as examples of "discrete acts" of discrimination of which an employee is immediately aware:

> Unlike hiring, firing, promotion and demotion decisions where an individual immediately knows that he or she has suffered an adverse employment action, there is often no clearly adverse employment event that occurs with a discriminatory pay decision. A pay-setting decision, unless it implements a pay cut, is unlikely to be viewed as discrimination at the time it occurs.[75]

Thus, a job elimination and transfer—like a demotion—continues to be a "discrete act" that

---

[73]155 Cong. Rec. S558 (daily ed. Jan. 15, 2009) (statement of Sen. Leahy).

[74]155 Cong. Rec. S698 (daily ed. Jan. 21, 2009) (statement of Sen. Durbin).

[75]H.R. Rep. No. 110-237, at 7.

triggers the charging period the day it is announced.

The legislative history clarifies that not all employment decisions affecting pay are consumed within the meaning of the phrase "other practice."[76]  Rather, the FPA was predominantly concerned with protecting the rights of employees to challenge compensation discrimination that is difficult to detect or concealed by the employer.

The employment decisions in this case, however, did not involve the kind of concealment anticipated by the FPA, nor were they "compensation decisions."  Defendant informed both plaintiffs of its decision to eliminate their job positions.  Both plaintiffs were offered, and both accepted, lower-paying positions within the district, in lieu of termination.  Defendant's employment decisions were easily identifiable discrete acts, not within the scope of the FPA. "The mere continuity of the employment relationship, in and of itself, is not enough to prolong the life of a cause of action."[77]  Therefore, plaintiffs were required to file a charge within 300 days of the date they were notified of the employment decisions they now belatedly seek to challenge.

### 3.    Case Law After the FPA

Post FPA, other courts have generally agreed that, unless the claim involves a discriminatory compensation decision or a hostile work environment, a discrete discriminatory act is an immediately actionable unlawful employment practice upon which an administrative

---

[76]*See Noel v. Boeing Co.*, –F.3d–, 2010 WL 3817090, at *8 (3d Cir. Oct. 1, 2010).

[77]*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980)).

charge must be filed within 180 or 300 days.[78]  For Congress expressed no intent to overturn *National Railroad Passenger Corp. v. Morgan*,[79] which held that discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire," and each incident of discrimination constitutes a "separate actionable 'unlawful employment practice.'"[80]  One court noted that, "[w]hile the [FPA] certainly contains expansive language in superseding the holding in *Ledbetter v. Goodyear Tire & Rubber Co.*, [citation omitted], it does not purport to overturn *Morgan*, and thus does not save otherwise untimely claims outside the discriminatory compensation context."[81]  Under *Morgan*, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[82]

And, although the FPA does not define the phrase "discriminatory compensation decision" or "other practice," yet courts have interpreted these phrases as distinguishable from other "discrete acts" identified by the Supreme Court before *Ledbetter*, even if they impact pay.[83]  Courts have held that an employer's failure-to-promote or decision to demote are not "compensation decisions," but are easily identifiable "discrete acts" that "occur"—for purposes

---

[78]*See, e.g.*, *Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 350 n.2 (5th Cir. 2010); *Russell v. County of Nassau*, 696 F. Supp. 2d 213, 226–29 (E.D.N.Y. 2010); *Tryals v. Altairstrickland, LP*, No. H-08-3653, 2010 WL 743917, at *7 (S.D. Tex. Feb. 26, 2010); *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 651 (E.D.N.Y. 2009); *Speer v. Mountaineer Gas Co.*, No. 5:06CV41, 2009 WL 2255512, at *7 (N.D. W. Va. July 28, 2009).

[79]536 U.S. 101 (2002).

[80]*Id.* at 114.

[81]*Richards v. Johnson & Johnson, Inc.*, No. 5-3663 (KSH), 2009 WL 1562952, at *9 (D.N.J. June 2, 2009).

[82]*Morgan*, 536 U.S. at 113.

[83]*See Noel v. Boeing Co.*, —F.3d—, 2010 WL 3817090, at *6 (3d Cir. Oct. 1, 2010).

of triggering the charging period—at the time they are announced.[84]  In making this distinction,

the Court of Appeals for the District of Columbia noted that "discrimination in compensation"

had an established meaning in employment law before Congress enacted the FPA:

> [I]n employment law the phrase "discrimination in compensation" means paying different wages or providing different benefits to similarly situated employees, not promoting one employee but not another to a more remunerative position.  In contrast, a discriminatory failure to promote is actionable regardless whether it affects an employee's compensation.  In context, therefore, we do not understand "compensation decision or other practice" to refer to the decision to promote one employee but not another to a more remunerative position.

> . . . That the Congress drafted and passed the [FPA] specifically in order to overturn *Ledbetter* strongly suggests the statute is directed at the specific type of discrimination involved in that case and not to other unspecified types of discrimination in employment.

> Nor does our interpretation of the phrase "discriminatory compensation decision or other practice" read "other practice" out of the statute.  We need look no further than *Ledbetter* itself for an example of a discriminatory "other practice," *viz.*, giving an employee a poor performance evaluation based upon her sex (or any other unlawful criterion) and then using the evaluation to determine her rate of pay.[85]

---

[84]*See, e.g.*, *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010) (holding that a decision whether to promote an employee to a higher paying position is not a "compensation decision" within the meaning of the FPA); *Harris v. Auxilium Pharms., Inc.*, 664 F. Supp. 2d 711, 747 (S.D. Tex. 2009) (holding that a claim based on failure to promote was not a "compensation decision," but an identifiable "discrete act" of which the plaintiff was immediately aware and could have filed a charge within the 300-day period, but failed to do so); *Tryals v. Altairstrickland, LP*, No. H-08-3653, 2010 WL 743917, at *7–*8 (S.D. Tex. Feb. 26, 2010) (holding that a demotion was a discrete act that triggered the 300-day period when it occurred); *Canaday v. Wynne*, No. 5:09cv247/RS/EMT, 2010 WL 2688065, at *10 (N.D. Fla. Apr. 26, 2010) (holding failure-to-promote claim was not covered by FPA) (Report and Recommendation adopted by *Canaday v. Wynn*, No. 5:09cv247/RS-EMT, 2010 WL 2688066 (N.D. Fla. July 2, 2010)); *Russell v. County of Nassau*, 96 F. Supp. 2d 213, 228 (E.D.N.Y. 2010) (holding that plaintiff's removal from a graded civil service position to an ungraded position was a discrete act, similar to a termination).  In *Russell*, the court also held that, as to plaintiff's claim that his wages were the result of a discriminatory decision to pay him less because of his race, the court found this claim timely under the FPA.  96 F. Supp. 2d at 227.

[85]*Schuler*, 595 F.3d at 374–75.

The Third Circuit has similarly noted the limited scope of the FPA: "the FPA was enacted to address a particular type of employment discrimination, compensation decisions, which are often concealed and not discovered until long after the 180- or 300-day administrative period expires."[86]  Although not binding, these cases are persuasive authority that the FPA's application to "discriminatory compensation decisions" and "practices" leaves unaffected other "discrete acts" of discrimination, such as demotions or job eliminations, for which the statute of limitations begins to run when the decision is announced.[87]

   *Tryals v. Altairstrickland, LP*[88] is especially analogous.  Tryals filed a charge challenging his demotion, which resulted in a change in job title and pay, more than 300 days after it occurred, arguing that it was a discriminatory compensation decision under the FPA.[89]  The district court found that the demotion was a "discrete act" and therefore Tryals's claim was untimely.[90]  In so holding, the court noted that, on the day of his demotion, "Tryals knew all the facts he relies on in this case."[91]  Here, plaintiffs knew all the facts forming the basis of their claims when defendant informed them of its decision to eliminate their positions and transfer

---

[86]*Noel*, 2010 WL 3817090, at *7.

[87]*See also Ragsdale v. Holder*, 668 F. Supp. 2d 7, 19 & n.10 (D.D.C. 2009) (holding that plaintiff's claim based on denial of advance annual leave in pay period 15 was a discrete discriminatory act); *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 964 (D. Minn. 2009) (dismissing plaintiff's age discrimination claim because he failed to provide any nexus between the alleged refusal to hire and his pay discrimination claims); *Leach v. Baylor Coll. of Med.*, No. H-07-0921, 2009 WL 385450, at *18 (S.D. Tex. Feb. 17, 2009) (noting, without deciding, that plaintiff's complaint regarding disparate job responsibilities may have accrued when he received notice that his job responsibilities had changed).

[88]No. H-08-3653, 2010 WL 743917 (S.D. Tex. Feb. 26, 2010).

[89]*Id.* at *7.

[90]*Id.* at *7–*8.

[91]*Id.* at *7–*8.

them to lower-paying positions with a two-year wage freeze. Plaintiffs do not argue that defendant concealed the effect of these decisions.

Although in the minority, a few courts have given a broader reach to the FPA's amendments. The Third Circuit held that "the failure to answer a request for a raise qualifies as a compensation decision because the result is the same as if the request had been explicitly denied."[92] In *Gentry v. Jackson State University*,[93] the district court denied summary judgment because there was an issue of material fact whether defendant's denial of tenure, although a "discrete act," was a "compensation decision" or "other practice" under the FPA because it negatively affected plaintiff's compensation.[94] And in *Bush v. Orange County Corrections Department*,[95] the court held that plaintiffs' pay-reduction claims were not time barred because, at the time of their demotions, plaintiffs did not realize their pay had been reduced.[96] These cases are thus inapposite.

The present case is the antithesis of the kinds of disguised compensation decisions with which Congress was concerned when it passed the FPA. Here, plaintiffs' job eliminations were explained to them directly and, when given the option in lieu of termination, plaintiffs *chose* to accept transfers to lower-paying positions rather than to seek employment elsewhere. Although the positions involved reduced pay, plaintiffs were informed of this before they accepted

---

[92]*Mikula v. Allegheny County of PA*, 583 F.3d 181, 186 (3d Cir. 2009).

[93]610 F. Supp. 2d 564 (S.D. Miss. 2009).

[94]*Id.* at 566.

[95]597 F. Supp. 2d 1293 (M.D. Fla. 2009).

[96]*Id.* at 1296; *see Robinson v. Brooklyn Coll.*, No. 09-CV-2174 (DLI) (LB), 2010 WL 3924012, at *6 (E.D.N.Y. Sept. 29, 2010) (finding plaintiff's demotion claim was timely because the demotion was undisclosed to plaintiff).

defendant's offer.  Moreover, defendant provided a two-year wage freeze, but informed plaintiffs that their pay would be reduced to the rate appropriate to their new positions in two years. Plaintiffs, therefore, were fully aware of the consequences of accepting the job transfers. Nothing was concealed from them.  These discrete, identifiable employment decisions are not the kinds of subversive decisions creating undetected wage disparities that the FPA was intended to protect against.

### 4.    Timeliness of Plaintiffs' Claims

The Court must first identify the precise "unlawful employment practice" of which plaintiffs complain before determining whether it comes within the intended scope of the FPA.[97] In so doing, "the proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts become most painful."[98]  Defendant made a set of decisions in 2003 and 2004 that affected Almond and Weems; defendant decided to eliminate their positions and to offer to transfer them to other positions in USD at lower pay, with saved pay grade for two years.   Almond and Weems were made fully aware of the decision to eliminate their positions and were made fully aware of the offer to transfer them to lower paid positions with saved pay for two years.  Neither plaintiff challenged the elimination of his position; both accepted the offer to transfer to lower paid positions and did not object to or challenge the transfers to lower-paying positions.  Instead, they attempted to carve out their claims based on the consequences of accepting job transfers to a lower-paying positions.  Assuming both plaintiffs included these facts in their 2006 administrative complaints, their claims are now time

---

[97]*Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980).

[98]*Brown v. Unified Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1187 (10th Cir. 2006) (quoting *Ricks*, 449 U.S. at 258) (emphasis in original).

barred.

The wage reductions, although delayed, were a known consequence of the job transfers of which Almond and Weems were both aware at the time they accepted transfers in lieu of termination, but did not challenge.[99] Plaintiffs' failure—or inability—to take advantage of the grace period extended to them before the full force of the job transfers was felt, does not toll the statute of limitations for filing claims on the basis of their transfers to lower-paying positions.[100] Furthermore, the benefit defendant extended to them at the time of their transfers—*i.e.*, the wage freeze—did not transform the subsequent wage reductions into separate and discrete acts of discrimination, nor did the job eliminations and plaintiffs' decisions to accept job transfers then become a "compensation decision or other practice" under the FPA. In her dissent to *Ledbetter*, Justice Ginsburg explained the critical difference between wage discrimination and other forms of discrimination:

> Pay disparities often occur, as they did in Ledbetter's case, in small increments; cause to suspect that discrimination is at work develops only over time. Comparative pay information, moreover, is often hidden from the employee's view. Employers may keep under wraps the pay differentials maintained among supervisors, no less the reasons for those differentials. . . . Pay disparities are thus significantly different from adverse actions "such as

---

[99]In their response to defendant's original motion, plaintiffs argued that they did not challenge the job elimination or transfer because they were not "adverse" employment actions until their wages were actually reduced. There is no authority for the argument that only employment decisions affecting wages are "adverse." *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (noting that the phrase "adverse employment action" is not limited to "monetary losses in the form of wages or benefits"); *see also MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1277–78 (10th Cir. 2005) (setting forth the elements of prima facie case for failure to promote, but wages is not an element of the claim). Rather, a "reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" will rise to the level of an adverse employment action. *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (quoting *Dick v. Phone Directories CO., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005)).

[100]*Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) ("The fact that they were afforded reasonable notice cannot extend the period within which suit must be filed.").

> termination, failure to promote, . . . or refusal to hire," all
> involving fully communicated discrete acts, "easy to identify" as
> discriminatory. . . .
>
> The realities of the workplace reveal why the discrimination with
> respect to compensation that Ledbetter suffered does not fit within
> the category of singular discrete acts "easy to identify." A worker
> knows immediately if she is denied a promotion or transfer, if she
> is fired or refused employment. And promotions, transfers,
> hirings, and firings are generally public events, known to co-
> workers. When an employer makes a decision of such open and
> definitive character, an employee can immediately seek out an
> explanation and evaluate it for pretext. Compensation disparities,
> in contrast, are often hidden from sight.[101]

Not only is wage discrimination more likely to be hidden, but, like a hostile work environment,

its adverse effect is incremental and cumulative.[102]

Here, however, plaintiffs are challenging fully communicated discrete acts that are easy

to identify. Specifically, they challenge defendant's decision to eliminate their positions and

plaintiffs' informed decisions to accept transfers to lower-paying positions. The wage reductions

were merely a delayed but inevitable consequence of those employment decisions, of which they

were both undisputedly aware at the time they were transferred.[103] None of the employment

decisions plaintiffs are presently challenging were previously concealed from them or unknown

to them. The charging period was triggered when defendant notified Almond and Weems on

June 10, 2003 and May 19, 2004, respectively, of the decision to eliminate their positions and the

---

[101]*Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 645, 649 (2007) (Ginsburg, J., dissenting).

[102]*Id.* at 648–49 (Ginsburg, J., dissenting).

[103]*Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007); *see Ricks*, 449 U.S. at 258 (holding that termination of employment was a "delayed, but inevitable, consequence of the denial of tenure," and the discrimination "occurred" at the time the tenure decision was made and communicated to Ricks, even though the effects did not occur until later); *see also Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (holding that the "proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful") (emphasis in original).

offer to transfer them to lower-paying positions with a two year wage freeze.[104]  Because

plaintiffs both filed their administrative complaints in April 2006, more than 300 days after they

were transferred, their claims are now time barred.

Accordingly, Weems's wage-reduction claim is dismissed for lack of subject matter

jurisdiction.  The Court grants summary judgment to defendant on both of plaintiffs' claims as

time barred.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to

Dismiss for Lack of Subject Matter Jurisdiction or Alternatively for Summary Judgment (Doc.

44) is granted.

**IT IS SO ORDERED.**

Dated: October 28, 2010

         S/ Julie A. Robinson         
         JULIE A. ROBINSON
         UNITED STATES DISTRICT JUDGE

---

[104]*Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994) (holding that a cause of action based on a demotion and transfer accrues on the date the employer notifies the employee); *see Haynes*, 456 F.3d at 1226 (noting that "[t]he mere continuity of the employment relationship, in and of itself, is not enough to prolong the life of a cause of action") (quoting *Ricks*, 449 U.S. at 257–58); *see also McIntire v. Tulsa County Sheriff*, 121 F. App'x 295, 299 (10th Cir. 2005) (holding that claim accrued when the decision to terminate plaintiff was announced, rather than her last day of actual work); *Rzepiennik v. Archstone-Smith, Inc.*, 331 F. App'x 584, 589 (10th Cir. 2009) (holding, even after the FPA, that a "discrete adverse action 'takes place' when a decision is made and communicated to the plaintiff, even if the effects of the action do not occur until later").